UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                     :
JOHN A. HALLBAUER, executor of the      :
Estate of Alden D. Smith, Deceased         :         CASE NO. 1:12-CV-1583
                                                     :
            Plaintiff,                               :
                                                     :
vs.                                                  :         OPINION & ORDER
                                                     :         [Resolving Doc. Nos. 1, 20, 21, 22, 23.]
MINNESOTA LIFE INSURANCE CO.           :
                                                     :
            Defendant.                               :
                                                     :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff John A. Hallbauer brings this lawsuit on behalf of the estate of Alden D. Smith

seeking payment on an accidental death and dismemberment life insurance policy for the death of

Mr. Smith's wife, Ellen Smith.  [Doc. 1.]  Defendant, Minnesota Life Insurance Company says that

Mrs. Smith's death was not accidental and that the Employee Retirement and Income Security Act

(ERISA), 29 U.S.C. §§ 1001 *et seq* grants it broad discretion to make this determination.  [Doc. 20.]

Because the Court finds that Minnesota Life acted within its discretion in finding that Mrs. Smith's

death was not accidental, as the policy defines accidental, the Court grants judgement for Defendant

and **DISMISSES** Plaintiff's Complaint.

## I. Background

        On March 20, 2006, Ellen D. Smith passed away.  [Doc. 16-2 at 25.]  Approximately a month

earlier and on February 18, 2006, Mrs. Smith fell from a wheelchair in her retirement community.

[Doc. 16-2 at 25.]  Paramedics transported her to University Hospitals of Cleveland where she was

admitted and diagnosed with a left femoral neck fracture.  [Doc. 16-2 at 25.]  On February 22, 2006,

Mrs.Smith underwent surgery for a hip fracture.  [Doc. 16-2 at 25.]  On February 27, 2006, she

-1-

Case No. 1:12-CV-01583
Gwin, J.

returned to her retirement community, where she continued treatment.  [Doc. 16-2 at 25.]
Nonetheless, on March 20, 2006, staff members found Mrs. Smith dead in her bed.  [Doc. 16-2 at 25.]

Mrs. Smith was transported  to the Cuyahoga County Coroner's office.  [Doc. 16-2 at 25.] The coroner determined "[t]hat the death in this case was the end result of chronic obstructive pulmonary disease [COPD], with other conditions of atherosclerotic heart disease and left femoral neck fracture, and was independent in nature."[Doc. 16-2 at 25.]  The Coroner's Verdict  then says "Cause of Death: Chronic obstructive pulmonary disease.  /  Other Condition:  Atherosclerotic heart disease.  /  Other Condition: left femoral neck fracture.  /  ACCIDENTAL."  [Doc. 16-2 at 26.]  The Certificate of Death lists the cause of death as "Chronic Obstructive Pulmonary disease," and lists "[a]cherosclerotic heart disease" and "[l]eft femoral neck fracture" as "[o]ther significant conditions."  [Doc. 16-3 at 24.]  Under "[m]anner of [d]eath" the box for "[a]ccident" is checked; the box for "[n]atural" is not.  [Doc. 16-3 at 24.]

Correspondence between Mr. Hallbauer and Minnesota Life reveals that Mr. Hallbauer acting under a power of attorney on behalf of Alden Smith sought payment of an insurance policy issued to the Smiths.  The life insurance policy was an employee benefit from Mr. Smith's employment at the Sherwin Williams Company.  [Doc. 16-3 at 53-55, 70, 60.]  The policy was active and provided accidental death benefits of $65,000 to Mrs. Smith for an accidental death.  [Doc. 16-1 at 1, 13; Doc. 16-3 at 14, 58.]  Minnesota Life denied the claim because "[b]ased upon the evidence reviewed, it appears Ms. Smith (sic) death was not a result of accidental injury as defined above."  [Doc. 16-2 at 22.]  Mr. Hallbauer appealed to Minnesota Life, but Minnesota Life again declined to pay the benefit.  [Doc. 16-1 at 3, 36.]  This lawsuit followed.

-2-

Case No. 1:12-CV-01583
Gwin, J.

## II.  Legal Standard

ERISA permits a plan beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Where the "the insurance plan administrator is vested with discretion to interpret the plan, we review the denial of benefits under the arbitrary and capricious standard. *DeLisle v. Sun Life Assur. Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009).  Such "a deferential standard of review remains appropriate even in the face of a conflict." *Conkright*, 130 S. Ct. at 1646.

The arbitrary and capricious standard is the least demanding form of judicial review of an administrative decision. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir.2000).  A decision regarding eligibility for benefits is not arbitrary and capricious if the decision "is the result of a deliberate principled reasoning process and if it is supported by substantial evidence." *Evans v. UnumPorvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (internal quotations and citation omitted ).  Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989) (internal quotations and citation omitted); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) *(en banc)*.  In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609,

Case No. 1:12-CV-01583
Gwin, J.

615 (6th Cir.1998).

## III.  Analysis

The Smiths' plan qualifies for ERISA's arbitrary and capricious standard of review.  Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the arbitrary and capricious standard of review applies.  *Conkright*, 130 S. Ct. at 1646.  The parties agree that this case falls within ERISA's scope. [Doc. 22 at 3; Doc. 20 at 1.]  The plan says that "[i]n making any benefits determination under this policy, we shall have the discretionary authority both to determine an individual's eligibility for benefits and to construe the terms of this policy." [Doc. 16-2 at 12.] This language triggers ERISA's arbitrary and capricious standard of review.

"A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).  In conducting such a review, the Court considers the existence of a conflict of interest, any administrative determinations on point, and the quality and quantity of medical opinions.  *See DeLisle*, 558 F.3d at 444.

### A. Conflicts of Interest

"[A] conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when, as here, the administrator is an insurance company and not the beneficiary's employer."  *DeLisle*, 558 F.3d at 445.  Minnesota Life employees made all of the decisions on whether to pay benefits and Minnesota Life also underwrote the policy.  [Doc. 16-1 at

-4-

Case No. 1:12-CV-01583
Gwin, J.

4-10.]  Minnesota Life relied almost exclusively on the death certificate (although the records from

Mrs. Smith's nursing home also receive mention).  The Coroner had no conflicts of interest in this

case.  [Doc. 16-1 at 4-10.]  Minnesota Life's medical expert concluded that "available information

in my opinion indicates that the coroner believes cause of death was due to COPD."  [Doc. 16-1 at

8.]  Thus, to the extent any bias was present, it was bias in interpreting Mrs. Smith's death certificate.

The Court accounts for this bias in reviewing Minnesota Life's reasoning.

### B.  The Coroner's Determination

The Death Certificate identifies "Chronic Obstructive Pulmonary Disease" as the cause of

death.  [Doc. 16-3 at 24.]  The Coroner's Verdict does the same.  [Doc. 16-2 at 26.]  Nonetheless,

the Death Certificate also identifies "atherosclerotic heart disease" and "left femoral neck fracture

as "other significant conditions," and specifies  "Manner of Death" as "Accident" and not "Natural."

[Doc. 16-3 at 24.]  These same conditions appear on the Coroner's Verdict.  [Doc. 16-2 at 26.]

While the Court acknowledges ambiguity in the evidence, at best, this evidence suggests that COPD

and the chair accident jointly contributed to Mrs. Smith's death.  It does not support the assertion that

the chair accident caused Mrs. Smith's death independent of her COPD.

### C.  Medical Evidence

In this case, the only independent medical evidence on cause of death came from the Coroner.

This leaves little record for the Court to evaluate.  Plaintiff does not draw the Courts attention to any

other.  Accordingly, the has little basis on which to overturn the administrator's determination.

### D.  Conclusion

The administrator denied Mr. Hallbauer's claim because "it appears Ms. Smith's death was

not a result of accidental injury as defined [by the plan].  The cause of death listed on the death

Case No. 1:12-CV-01583
Gwin, J.

certificate is 'Chronic Obstructive Pulmonary Disease.'" [Doc. 16-1 at 3.] However cursory this reasoning may appear, it is nonetheless "'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm*, 626 F.3d at 308 (quoting *Baker*, 929 F.2d at 1144). The plan defines "accidental death" as "an insured's death . . . [that] results, directly *and independently of all other causes*, from an accidental injury which is unintended, unexpected, and unforeseen." (Emphasis added.) [Doc. 16-1 at 18.] This is sufficient to uphold the administrative record even after a closer review because of Minnesota Life's inherent bias.

Moreover, Minnesota Life's internal  review of the claim shows a sufficiently reasoned deliberation and review of the evidence.  Company documents show that administrators reviewed both the original claim and subsequent evidence submitted by Mr. Hallbauer. [Doc. 16-1 at 4-10.] Company officials determined that the fall "exacerbate[d] underlying conditions (COPD, CAD, etc.) & that these underlying conditions ultimately cause[d] death" [Doc. 16-1 at 5.] This reasoning is sufficient to uphold the plan administrator 's decision that accident was not an independent cause of death, even in light of any conflict.

In sum, this case turns on reading of the Death Certificate and Coroner's Verdict.  These might well provide substantial evidence to support a conclusion of either accidental death or natural death.  But the plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Conkright*, 130 S. Ct. at 1646.  By definition, discretionary authority means that the plan administrator will not always follow the Coroner's Verdict or the Death Certificate; otherwise the discretion would reside in these offices. *Cf. Delisle*, 558 F.3d at 446.  Here, it was not an abuse of this that the cause of death was COPD and disregard the legal conclusion that the death was accidental.

-6-

Case No. 1:12-CV-01583
Gwin, J.

Admittedly Mrs. Smith's case suggests that insurers may have broad discretion to deny benefits to those who die of multiple conditions or whose death certificates contain ambiguity, leaving employees who diligently paid their premiums to litigate uphill battles against a demanding standard of review.  But this is the course Congress has charted.

### IV.  Conclusion

For the foregoing reasons the Court DISMISSES Plaintiff's complaint and grants judgment for Defendant.

IT IS SO ORDERED.


Dated: January 22, 2013                              s/         *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE